UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS EIBEN,

        Plaintiff,                    No. 11-CV-10298

vs.                                    Hon. Gerald E. Rosen

GORILLA LADDER COMPANY, TRICAM
INDUSTRIES, INC., and THE HOME
DEPOT, U.S.A., INC.,

        Defendants.

_____/

OPINION AND ORDER REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, MOTION *IN LIMINE*,
AND MOTION TO STRIKE AFFIDAVITS

I. INTRODUCTION

       This product liability action is presently before the Court on three motions filed by

Defendants Tricam Industries, Inc. and The Home Depot, U.S.A., Inc., specifically (1)

Defendants' Motion for Summary Judgment; (2) Defendants' Motion *in Limine* to bar the

opinions of Plaintiff's proffered expert, John Morse, and (3) Defendants' Motion to Strike the

Affidavits of John Morse and Plaintiff Douglas Eiben.  Plaintiff has responded and Defendants

have replied.  Having reviewed the parties' briefs in support of, and in opposition to, the various

motions, as well as the accompanying exhibits and the remainder of the record, the Court finds

that the relevant allegations, facts, and legal issues are sufficiently presented in these written

submissions, and that oral argument would not aid the decisional process.  Accordingly, the

Court will decide Defendants' motions "on the briefs."  *See* Eastern District of Michigan Local

Rule 7.1(f)(2).  This Opinion and Order sets forth the Court's rulings.

1

## II.  PERTINENT FACTS

On November 3, 2007, Plaintiff, Douglas Eiben ("Eiben"), fell while attempting to descend from the roof of his neighbor's home on a Gorilla Ladder "AL-13" 13-foot articulating ladder.[1]  The ladder was manufactured by Defendant Tricam Industries, Inc. ("Tricam"), and sold by Defendant Home Depot U.S.A., Inc. ("Home Depot").[2]  Eiben purchased the ladder in 2003 from Home Depot.  *See* Plaintiff's Dep., Defendant's Ex. 3, p. 14.  Eiben testified that he had no conversations with any Home Depot personnel concerning the ladder's purchase.  *Id.* at p. 15.  He further testified that he received and read the user's manual that came with the ladder at the time of the purchase, and that he understood, and was not confused by, the instructions and warnings contained in the manual.  *Id.* at pp. 19-20.

The manual sets forth cautionary instructions and specific items of required maintenance. The first page of text of the manual states in large bold-face print, "Failure to read and follow all instructions on this ladder, including those under the steps, may result in injuries or death."  *See* Defendant's Ex. 10. Under the heading of "Maintenance" the manual provides, "Replace inner and outer feet as required to ensure safety."  *Id.*  The manual also provides under the heading, "Inspection":  "Inspect upon receipt and before each use," and "destroy ladder if broken [or] worn." [*See* 9/23/11 Expert Report of John Morse, p. 13, Plaintiff's Response Ex. C and  Ex. A

---

[1]  An "articulating ladder" is capable of being used both as an "A-frame" and a "straight" ladder, extending to a length of almost eleven feet. It may also be used as an "A-frame" ladder on a stairway by extending the legs to different lengths.

[2]   Although Plaintiff also named "Gorilla Ladder Company" as a separate defendant in this matter, Gorilla Ladder Company does not exist as a business entity; Gorilla Ladder is only a brand name of ladder manufactured by Defendant Tricam Industries.  *See* Notice of Removal, ¶ 4.

to Defendants' Motion in *Limine*, Dkt # 15-2 Dkt. # 15-2 (incorporated by reference in Defendants' Summary Judgment Brief)].  Additionally, there are a number of warning labels on the ladder itself.  *Id.*  One of these labels contains an instruction not to set the ladder up on a slippery surface.  *Id.*

Eiben testified that he used the ladder some 500 times in his work as a heating and air conditioning installer during the four years prior to the accident.  However, prior to November 3, 2007, Eiben had used the ladder exclusively in the "step ladder" (i.e., A-frame) mode; November 3, 2007 was the first time that he used the ladder in the "straight" ladder mode.  *Id.* at pp. 17-19.  Eiben admitted he did not read the instructions or warnings on the ladder concerning use of the ladder in the straight mode on the day of the accident because he did not believe it was necessary.  *Id.* at pp. 20-21.   Eiben testified that he was familiar with setting up extension ladders from using them in his work, and he further testified that he also carried with him and used in his work "standard" extension ladders in addition to the Gorilla A-13 ladder at issue in this case.  *See* Plaintiff's Dep., pp. 30-31.

On the day in question, Eiben and his brother, Michael, set up the Gorilla ladder in a fully-extended mode, leaning it against the house at an incline, with the top against the gutter at the roof line.  *Id.* at 27-28.  Eiben then climbed the ladder and attached a bungee cord around the ladder's rails and affixed the cord to the gutter so the ladder would not move.  *Id.* at p. 40. Eiben testified that the ladder was stable but that asphalt surface upon which it was set was wet with "a light coating [of moisture] like a dew."  *Id.* at pp. 41.[3] Eiben's brother, Michael, then

---

[3]  Eiben testified as follows:

climbed the ladder to the roof.  *Id.* at 43.  Douglas Eiben did not hold the ladder for his brother.

*Id.*

---

Q:     In terms of the surface on which the ladder was placed, was the surface moist, wet?  Did it have any sort of, I guess you would call it, foreign substance on it?

A:     No foreign substance.  When you describe by moist or wet, you're talking about wet being puddles or moist as being like a light coating of like a mist or dew[?]

Q:     Well excluding actual – I assume you didn't place the feet of the ladder in a puddle?

A:     No.

Q:     Was the surface of the asphalt where the ladder was set up wet?

A:     I would say light coating like a dew.

Q:     Was it early in the morning so that there was dew there?

A:     I remember it being a cold brisk day and to my knowledge when I woke up in the morning I noticed frost on the ground [that] was in the process of melting [at the time of the accident.]

Eiben 6/11/11 Dep., pp. 41-42.  (Michael Eiben testified that he had no recollection of what the weather was like that day, nor did he have any recall of whether there was snow, ice, or anything else on the ground.  *See* Michael Eiben Dep., pp. 11-12, Defendants' Ex. 6.)

Five months after his deposition, as support for his Response to Defendant's Motion for Summary Judgment, Eiben submitted an Affidavit contradicting this testimony, in which he stated, "The driveway was not wet at the time of the accident."  *See* Eiben 11/14/11 Affidavit, ¶ 5, Defendant's Response Brief, Ex. B.  However, it is well-settled that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony."  *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617 (6th Cir. 2001) ("[Plaintiff's expert's] affidavit is not cognizable for purposes of the summary judgment decision because it was made after the motion for summary judgment was filed and because it contradicts his earlier deposition testimony.")

After Michael climbed onto the roof, Douglas got on the ladder.  Douglas Eiben testified that he first "tested" the ladder's stability by "hopping" on the first rung of the ladder.  *Id.* at p. 45.  He further testified that there was no movement of the ladder as he climbed to the roof.  *Id.*

A short while later, Eiben had to return to his truck to get a tape measure.  His brother, meanwhile, remained on the roof.  According to Plaintiff, when he attempted to remount the ladder from the roof to return to the ground to retrieve a tape measure, the ladder "slid out" and he fell to the ground.

Eiben testified that as he began to descend the ladder, his hands were on the ladder's vertical rails and his left foot was on a ladder rung.  He was facing the ladder and bringing down his right foot when the ladder allegedly "slid out." [Plaintiff's Dep., p. 49-50]. [4]  He testified that he did not see the bungee cord moving but he had the "sensation" that the ladder was moving away from the house.  *Id.* At 51-52.  As he sensed that he was starting to fall, Eiben said he grabbed onto the gutter with his right hand to prevent the fall, but kept his left hand on the

---

[4] According to the Botsford Hospital records, Eiben told the emergency room doctor that he fell because when he "stepped back on the ladder, [he] missed [a] step[]."  *See* Defendants' Ex. 8. Although Plaintiff testified in his deposition that he did not recall any of the questions that were asked of him in the emergency room or any of his responses, he maintains in his Response Brief that he" did not miss a rung or step" and argues that, the statement in the medical record is "double-hearsay" and, as such, the notation in the record of what Plaintiff told the doctor should be disregarded.  See Plaintiff's Response Brief, p. 3.  However, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."  Fed. R. Evid. 805.  A statement of a party is not hearsay, *see* Fed. R. Evid. 801(d)(2)(A), and, the Botsford Hospital record within which Eiben's "stepped back on the ladder [and] missed [a] step" statement is contained falls within Fed. R. Evid. 803(6), the hearsay exception for "records of a regularly conducted activity."  Hence, it is not hearsay or "double-hearsay," and as such, may properly be considered in deciding Defendants' motion for summary judgment.

ladder.  *Id.* at 52-53. [5]  Eiben fell onto his back, hitting his head on the driveway; the ladder fell on top of him. *Id.*, pp. 52, 55.[6]

Michael Eiben did not see or hear the fall, as he was on the other side of the roof at the time.  [Michael Eiben Dep., Defendant's Ex. 6, p. 21.]  He only discovered that his brother had fallen when he went up to the peak of the roof where he could view the driveway to find out what was taking Douglas so long to retrieve the tape measure.  *Id.* at p. 22.  He then jumped off the roof, removed the ladder from on top of his brother, and called 911.  *Id.* at pp. 31-32.  Eiben was subsequently transported by ambulance to Botsford Hospital where he underwent surgery for his back injury. *Id.,* pp. 32-33, 35; Plaintiff's Dep., p. 24..[7]

Plaintiff thereafter initiated the instant action in Oakland County Circuit Court.  The action was timely removed by Defendants to this Court.  In his one-count Complaint, Plaintiff asserts that Defendants are liable for his injuries because the Gorilla ladder in question was negligently designed and/or manufactured, and Defendants failed to warn of the hazard that the

---

[5]   Apparently, Eiben held onto the gutter and it pulled away from the roof during Eiben's fall as both Eiben and his brother testified that the gutter had been damaged and had to be replaced after the accident.  *See* Plaintiff's Dep., p. 54; Michael Eiben Dep., pp.  29-30.  When Michael found his brother on the ground, he testified that the bungee cord was still hooked to the damaged gutter. *Id.* at 29.

[6]   Eiben testified that he has no recollection as to how he landed (i.e., he did not know the direction his body was in, whether his head or his feet ended up closer to the house) and he had no recollection as to whether the ladder, as it lay on top of him, crossed his body perpendicularly or fell parallel on top of him.  See Plaintiff's Dep., pp. 56-57.  Eiben's brother, Michael, however, testified that when he saw his brother, he was lying face up on the ground with "his head (as opposed to his feet) closest to the house, and the ladder was on top him at the "same angle as he was towards the house."  [Michael Eiben Dep., p. 29].

[7] Eiben's injuries included a burst fracture of the twelfth thoracic vertebrae which required fusion surgery with vertebral augmentation and insertion of a biomedical device at T11-L1. *See* Complaint ¶ 15.

ladder could "slide-out" from under a user.  Plaintiff further asserts that Defendants are liable for breach of express and implied warranties.

To establish his claims of negligent design and negligent failure to warn, Plaintiff retained John S. Morse, a mechanical engineer, to offer an expert opinion.  Defendants were provided with Morse's expert report on September 23, 2011.[8]  Claiming that Morse's opinions in his expert report lack the reliability required by Fed. R. Evid. 702 and *Daubert*,[9] on October 21, 2011, Defendants filed the instant motion for summary judgment on all of Plaintiff's claims based upon the lack of reliable and admissible expert testimony necessary to support Plaintiff's allegations of negligent design, negligent failure to warn, and the alleged causal connection between the alleged negligence and Plaintiff's fall.[10]  (They also filed a *motion in limine* seeking to bar Morse's testimony at trial for these same reasons.)

---

[8]   The original scheduling order in this matter provided for a discovery cut-off of July 31, 2011 and a dispositive motion deadline of August 31, 2011. See 2/9/11 Scheduling Order, Dkt. # 5. On July 6, 2011, the parties stipulated to an extension of the discovery cut-off only until September 14, 2011.  *See* Dkt. # 7.  Then on August 19, 2011, Defendants moved for, and the Court granted, an extension of the dispositive motion deadline until October 21, 2011 because Plaintiff had stipulated to provide his expert's report no later than September 21, 2011.  *See* 8/19/11 Motion to Extend, Dkt. # 12.  Defendants made clear in that motion that they intended "to file motions for summary judgment, pursuant to FRCP 56 and to strike or bar the testimony of Plaintiff's purported expert witness, pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). However, such motions necessarily must be based upon the opinions and conclusions, and bases for same, that must be set forth in Plaintiff's Rule 26 expert report."  *Id.* at ¶ 7.

[9]   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[10]   In their motion, Defendants also contend that summary judgment is warranted based upon Plaintiff's failure to provide evidence of a manufacturing defect and failure to provide evidence of negligent conduct supporting his implied warranty claim.  Defendants further argue that summary judgment is warranted based upon the open and obvious nature of the alleged product hazard.

Plaintiff responded to Defendants' Summary Judgment Motion and in support of that response, Plaintiff submitted a new Affidavit from John Morse. This affidavit, prepared and submitted after the submission of Morse's Expert Report and after Defendants had filed their motion for summary judgment, contains information not contained in Morse's September 23, 2011 Expert Report. Defendants, therefore, moved to strike that affidavit.[11]

## III. DISCUSSION

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir.2007). Yet, the non-moving party "may not rely merely on allegations or denials in its own pleading," but "must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be

---

[11]   Defendants also moved to strike the post-summary judgment affidavit of Douglas Eiben, because his affidavit contradicts his earlier sworn deposition testimony. *See* note 3 *supra.*

admissible in evidence, and show that the affiant is competent to testify on the matters stated."
Fed. R. Civ. P. 56(e)(1).  Finally, "[a] mere scintilla of evidence is insufficient" to withstand a
summary judgment motion; rather, "there must be evidence on which the jury could reasonably
find for the non-moving party." *Smith Wholesale*, 477 F.3d at 861 (internal quotation marks and
citation omitted).

B.   <u>DEFENDANTS' MOTION TO STRIKE</u>

Defendants' Motion for Summary Judgment in this case is predicated upon their
argument that Plaintiff cannot make out a legally cognizable product liability claim under
Michigan law because of the lack of reliable and admissible expert testimony necessary to
support his allegations of negligent design, negligent failure to warn, and the alleged causal
connection between the alleged negligence and Plaintiff's fall. Defendants' argument is
predicated, in substantial part, on the September 23, 2011 report of Plaintiff's liability expert,
John Morse.  To rebut Defendants' arguments of the non-reliability of Morse's expert report,
along with his Response Brief, Plaintiff submitted the November 7, 2011 Affidavit of John
Morse.  Defendants have moved to strike that affidavit arguing that, through this Affidavit,
Morse is attempting to present an untimely "new" expert report.

Federal Rule of Civil Procedure 26(a)(2)(B) provides that an individual retained to
provide expert testimony shall provide a signed written report that "*must* contain: (i) a *complete
statement of all opinions* the witness will express and the basis and reasons for them; (ii) *the
facts or data considered by the expert in forming them*; (iii) any exhibits that will be used to
summarize or support them; (iv) *the witness's qualifications, including a list of all publications
authored in the previous 10 years*; (v) *a list of all other cases in which, during the previous 4*

9

*years, the witness testified as an expert at trial or by deposition*; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Further, Rule 26(a)(2)(C) provides that "these disclosures shall be made at the time and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2). In this case, the Court ordered Plaintiff to provide Defendants with his expert's report by September 21, 2011. *See* Order Granting Extension of Deadlines, Dkt. # 13.[12] This deadline was agreed upon by the parties with the understanding that Defendants would be using the expert's opinions and conclusions set forth in Plaintiff's Rule 26 expert report, as the basis for their intended motion for summary judgment. *See* the parties' agreed-upon Motion to Modify Deadlines [Dkt # 12].

The Sixth Circuit has held that "[u]nder Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *R C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp*., 150 F.3d 735, 742 n. 6 (7th Cir.1998) (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co*., 47 F.3d 277, 284 (8th Cir.1995)).

A violation of Rule 26 gives rise to the application of Rule 37(c) (1), which provides that "[i]f a party fails to provide information… as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Sixth Circuit has

---

[12]  Fed. R. Civ. P. 6(d) provides for an additional three days to act when service is made by mail or through electronic means. Hence, Morse's September 23, 2011 was timely provided in accordance with the Court's Order..

interpreted this rule as requiring the "automatic and mandatory [exclusion of non-disclosed evidence] unless non-disclosure was justified or harmless." *Dickenson v. Cardiax and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir.2004) (quoting *Musser v. Gentiva Health Servs.*, 365 F.3d 751, 758 (7th Cir.2004)); *R.C. Olmstead, supra,* 606 F.3d at 271 ("Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified. " *Id.* (citations omitted)).   The burden is on the potentially sanctioned party to prove harmlessness. *Id.* at 271-272.  "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. Bic Corp.*, 218 F.3d 566, 578 (6th Cir.2000) (citing *Trilogy Comm'n v. Times Fiber Comm'n*, 109 F.3d 739 (Fed.Cir.1997)). Where a plaintiff does not make any argument of harmlessness or justification, a district court does not abuse its discretion in excluding the expert's report. *R.C. Olmstead, supra*.

As in *R.C. Olmstead*, *supra*, Plaintiff  here, makes no claim of harmlessness or justification for his untimely attempt to correct, by way of an affidavit, the deficiencies in his expert's report upon which Defendant's motion for summary judgment is predicated.  He states only that the Court should allow and consider Morse's Affidavit because it "merely gives further clarification and specificity [to his report] in light of Defendants' attacks."  *See* Plaintiff's Response to Motion to Strike, p. 4.

Contrary to Plaintiff's assertions, Morse's Affidavit does much more than merely "clarify" his report.  For example, Morse provides for the first time in Paragraphs 2-13 of his Affidavit, his qualifications to testify as an expert on ladder design and ladder safety warnings.

There is no mention whatsoever in Morse's original report of his qualifications, other than the notation on the cover page of the report that he is a "mechanical engineering consultant." See Morse Report, Plaintiff's Ex. C; Defendants' Motion in *Limine*, Ex. A. Morse further provides for the first time in Paragraphs 26-37 of his Affidavit, specific examples of alternative ladder foot designs which Morse claims would wear more slowly that the AL-13's feet and, hence, are safer than the foot design of the AL-13, and which he maintains are feasible for use on the AL-13. The discussion of the foot designs of these five other ladders presently on the market is far more than mere "clarification" of the bare assertion in his report that, "[t]here are many safer alternative designs for ladder feet which would have prevented this ladder incident."  *See* Morse Expert Report, p. 11.  His Affidavit is essentially a "new" expert report.

Plaintiff argues that Morse's Affidavit should not be stricken because it merely provides "supplementation" of  his original report.  Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" his disclosure upon information later acquired, "[i]t is not mere 'supplementation' when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains actual reasoning."  *Ullman v. Auto-Owners Mut. Ins. Co.*, 2007 WL 1057397  at *3 (S.D. Ohio 2007). Rule 26(e) simply does not contemplate supplying wholly missing information such as found here.  As the court held in *Allgood v. General Motors Corp.*, 2007 WL 647496 (S.D. Ind. 2007), Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Id.*  Moreover, given that all of the information upon which Morse bases his "supplementation" was available at the time he prepared his original expert report, Morse's

12

Affidavit cannot be said to "include information thereafter acquired" or to be a genuine attempt to remedy previously "incomplete or incorrect" information. Fed. R. Civ. P. 26(e)(1).

The narrow reasons for permissible supplementation under Rule 26(e)(1) simply do not exist here. This is not a situation in which a party sought to supplement a report to correct a late-in-the-day error or inaccuracy in its reasoning. *See, e.g., Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3 (D.D.C.2005) (permitting error correction via supplementation). Nor is this a case in which supplementation would serve as a response to an opposing expert's pointing out gaps in Morse's chain of reasoning. *See, e.g., Miller v. Pfizer, Inc* ., 356 F.3d 1326, 1332 (10th Cir.2004). This is not even a case in which supplementation would reflect an expert's changed opinion. *See* Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments, Subdivision (e) ("changes in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under [Rule 26(e)(1) ]").

By seeking to transform a conclusory report via supplementation, Plaintiff is in effect essentially and impermissibly presenting a new opinion. *See Minebea Co., Ltd*., 231 F.R.D. at 6 ("The Rule also prevents experts from 'lying in wait' to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony.")

Furthermore, even if the Court were to treat Morse's Affidavit as a "supplementation" of his original report, such supplementation would not be permissible here because Plaintiff failed to "supplement" by the Rule 26(e)(2) deadline given that the both the discovery cut-off and the extended deadline set by the Court for the disclosure of Plaintiff's expert report had passed. *See*

Fed. R. Civ. P. 26(e)(2) ("Any additions or changes to [information included in the report] must be disclosed by the time the parties' pretrial disclosures are due.")

As explained by the court in *Allgood v. General Motors Corp.*, 2007 WL 647496 (S.D. Ind. Feb. 2, 2007), the presentation of a new or transformed opinion by "supplementation" must be examined closely:

> Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report. . . .
>
> To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could "supplement" existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.

*Id.* at *3-4 (quoting *Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M.2003)). This Court agrees.

Morse's failure to include the opinions and bases for his opinions in his Rule 26 report is harmful to Defendants because discovery is now closed and Defendants have not been afforded the opportunity to test Morse's claims that the newly disclosed alternative foot designs have a wear rate that is materially different from the AL-13's or to determine whether the feet on these alternative designs have a greater resistance to slippage on asphalt, weathered, wet, or dry. Prejudice further exists in connection with the previously filed summary judgment motion. *See Ullman, supra*.

14

Furthermore, as indicated, Plaintiff does not argue that Morse's failure to comply with Rule 26 with respect to his new opinions and new bases for his opinions is "substantially justified" or is "harmless."  In *Miller v. Pfizer, Inc*., 356 F.3d 1326, 1334 (10th Cir. 2004), the court held that a party's lack of explanation as to why an opinion based on data acquired before the expert report was due but disclosed later in the case was cause for excluding the expert's new analysis.  *See also Vujcevic v. Ogelbay Norton Marine Services Co.,  L.L.C.,*  2007 WL 4181555 (E.D. Mich. 2007) (granting Defendants' motion to strike Plaintiff's expert's supplemental report and affidavit "[b]ecause the court is not persuaded that Plaintiff shows substantial justification for allowing [the expert's] untimely supplemental report and affidavit, or that the admission of the report and affidavit would be harmless.")

Applying the foregoing authorities in this case, the Court concludes that John Morse's Affidavit should be stricken.  Accordingly, the Court will grant Defendants' Motion to Strike as to the Affidavit of John Morse.

The Court will also grant, in part, Defendant's Motion to Strike the Affidavit of Plaintiff, Douglas Eiben.  This Affidavit was filed long after Eiben's deposition and after Defendants filed their motion for summary judgment.  As noted above, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony."  *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  As a consequence, the Sixth Circuit has made it clear that

> [a] post-deposition affidavit submitted at the summary judgment stage that directly contradicts the non-moving party's sworn deposition testimony should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.

*Aerel S.R.I. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).

Here, Plaintiff Eiben testified at his deposition that when he set up the ladder on the day of the accident, there was melting frost or dew on the driveway.  In paragraph 5 of his post-summary judgment Affidavit, Eiben claims that the driveway was not wet.

Similarly, in his deposition Eiben testified that he had no recollection of any of the questions asked of him by medical personnel at Botsford Hospital nor of any of his responses.  Yet, in paragraph 4 of his Affidavit, Eiben affirmatively states that he did not tell anyone at the hospital that he fell when he missed a step or rung on the ladder.  Plaintiff offers no justification for these contradictions.

Because a party may not, in response to a motion for summary judgment,  offer a post-deposition affidavit that contradicts his earlier sworn deposition testimony contradict his earlier deposition, the Court will grant Defendants' Motion to Strike Douglas Eiben's Affidavit [Plaintiff's Response, Ex. B] as to paragraphs 4 and 5 of the Affidavit.  These statements will be stricken.

The Court will not, however, strike the statement in paragraph 3 of the Affidavit ("The ladder slid out unexpectedly, without warning as I descended the ladder in a normal fashion.")  Although, this might contradict the Botsford Hospital medical record notation as to what Plaintiff told the doctors, it does not directly contradict anything stated by Eiben in his sworn deposition.

Accordingly, the Court will not consider paragraphs 4 and 5 of Douglas Eiben's Deposition or the Affidavit of John Morse in deciding Defendants' Motion for Summary Judgment.

The Court now turns to Defendants' dispositive motion.

C.   <u>PLAINTIFF'S CLAIMS OF NEGLIGENT DESIGN AND FAILURE TO WARN</u>

In order to establish a *prima facie* case of product liability, the plaintiff must show "that the defendant supplied a product that was defective and that the defect caused the injury." *Auto Club Ins. Ass'n v. Gen. Motors Corp.*, 217 Mich. App. 594, 604, 552 N.W.2d 523 (1996). A defect in the product can be established through a variety of theories, including: (1) negligent design of the product; (2) negligent manufacture of the product; (3) negligent failure to warn about some aspect of the product; (4) breach of an express or implied warranty; or (5) misrepresentation or fraud. *Rodgers v. Ford Motor Co.*, 2008 WL 4641640 (Mich. App. 2008) (citing Michigan Law and Practice (2d ed), Torts § 8.1).  Plaintiff claims in this case are brought under negligent design and failure to warn theories.[13]

<u>Negligent Design Theory</u>

Manufacturers have a duty to design their products "to eliminate any unreasonable risk of foreseeable injury." *Ghrist v. Chrysler Corp.*, 451 Mich. 242, 248, 547 N.W.2d 272 (1996) (quotation marks and citation omitted).  A negligent design claim "questions whether the design chosen renders the product defective, *i.e.*, whether a risk-utility analysis favored an available safer alternative." *Gregory v. Cincinnati, Inc.*, 450 Mich. 1, 11, 538 N.W.2d 325 (1995).  This

---

[13]  Although Plaintiff's Complaint also contained a negligent manufacture allegation and a passing reference to an alleged breach of implied and/or express warranties, *see* Compl., ¶¶ 12(C), 13, he makes no argument as to any of these claims (even though Defendants have addressed them in their summary judgment brief) and only argues that he has sufficiently made out  *prima facie* claims of negligent design and failure to warn. When a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992).

risk-utility analysis "considers alternative safer designs and the accompanying risk compared against the risk and utility of the design chosen 'to determine whether . . . the manufacturer exercised reasonable care in making the design choices it made.'" *Id*. at 13, 538 N.W.2d 325 (footnote and citation omitted). Such an inquiry requires the plaintiff to prove (1) that the product was not reasonably safe for its foreseeable uses when it left the control of the manufacturer; and (2) a feasible, alternative design was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to its users. M.C.L. § 600.2946(2); *see also Ghrist, supra* 451 Mich. at 249, 547 N.W.2d 272, and *Gregory, supra* 450 Mich. at 11-13, 538 N.W.2d 325.

Thus, to survive a motion for summary judgment on a negligent design claim, the plaintiff must produce evidence showing:

(1)     the severity of the injury was foreseeable by the manufacturer;

(2)     the likelihood of occurrence of [the plaintiff's] injury was foreseeable by the manufacturer at the time of distribution of the product;

(3)     there was a reasonable alternative design available;

(4)     the available alternative design was practicable;

(5)     the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and

(6)     the omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Peck v. Bridgeport Machines*, 237 F.3d 614, 617-18 (6th Cir.2001) (citing *Hollister v. Dayton*, 201 F.3d 731, 738 (6th Cir.2000)) (applying Michigan law).

18

Failure To Warn Theory

A plaintiff can also show that a product was rendered defective by the manufacturer's failure to warn potential users of dangers involving the intended uses, and foreseeable misuses, of the product. *Gregory, supra* 450 Mich. at 11, 538 N.W.2d 325. To establish a *prima facie* case of failure to warn, a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) the plaintiff suffered damages. *Warner v. Gen. Motors Corp*., 137 Mich. App. 340, 348, 357 N.W.2d 689 (1984). A manufacturer has a duty to warn if it has actual or constructive knowledge of a danger, which is not obvious to users, and the manufacturer failed to use reasonable care in informing users of the danger or the facts tending to make the condition dangerous. *Glittenberg v. Doughboy Recreational Industries* (On Rehearing), 441 Mich. 379, 389-390, 491 N.W.2d 208 (1992).  However, if a product's danger is open and obvious to a reasonable consumer, the manufacturer has no duty to warn. *See id*. at 391-92.

Turning to Defendants' motion for summary judgment in this case, Defendants argue that the cognizable record evidence in this case establishes that Plaintiff's liability expert, John Morse, is not qualified under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786 (1993) to render an expert opinion as to any alleged design defect in this case, and even if he is so qualified, he has failed to offer testimony as to any alternative design or the feasibility of such an alternative design or any valid, reliable testimony as to causation.  Lacking such evidence, Defendants argue that Plaintiff is unable to establish a *prima facie* defective

design claim.  Defendants also argue that they had no duty to warn in this case because the

dangers of ladder slide out and of falling from a ladder are open and obvious.

C.    THE EXPERT OPINION OF JOHN MORSE IS NOT ADMISSIBLE DUE TO LACK
      OF RELIABILITY

To establish his claims of negligent design and failure to warn, Plaintiff Eiben relies upon

the report of his expert witness, John Morse.  Morse's theory follows:

(1) The feet of the accident ladder were worn to the degree that their
resistance to slippage on asphalt was materially reduced;

(2) Had Mr. Eiben replaced the feet with the "replacement" feet offered by
Tricam, the fall would not have occurred;

(3) Eiben's failure to replace the feet was caused by Tricam's failure to
instruct Mr. Eiben to do so;

(4) Alternatively, the AL-13 was negligently designed because the feet did not
contain a large enough surface area;

 (5) As a result of lack of surface area, Eiben's fall occurred;

(6) Eiben was not adequately warned of the danger of ladder slip out;

(7) If Eiben had been adequately warned, the fall would not have occurred.

In his report, Morse claims that the AL-13's feet were negligently designed

because:

(1) The ladder's feet "wore" too rapidly, [Morse Report, p. 17, ¶ 7], or

(2) The design of the feet did not provide sufficient contact with the support
surface; *Id.*, or


(3) The ladder's manual, instructions and warnings did not adequately inform
Douglas Eiben that (1) worn feet should be replaced or inform him of (2)
the hazard of the ladder "slipping out"; [*Id.* at ¶¶ 9-10]; and

(4) The lack of friction between the ladder's feet and the driveway upon which the ladder was placed, caused the ladder to "slip out" as Douglas Eiben attempted to mount the ladder from the roof. [*Id.* at p. ¶ 11]; and

(5) The lack of "reasonably safe" instructions and warnings caused the Plaintiff' fall  *Id.*

[*See* Morse Report, Plaintiff's Response Ex. C; Ex. A to Defendants' Motion *in Limine*, Dkt. # 15-2.]

Defendants argue that Morse is not qualified to testify as an articulating ladder design expert or as an articulating ladder instructions and warnings expert. They further argue that Morse fails to meet Rule 702 and *Daubert*  validity and reliability requirements.

1.    THE FOUNDATION REQUIREMENTS OF FED. R. EVID. 702 AND *DAUBERT*

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training,   or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), the Supreme Court established guidelines for courts to use in determining the admissibility of expert opinion testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence. Although the Court recognized the role of the jury in evaluating expert testimony, the Court in

*Daubert* emphasized the "gatekeeping" function of the trial judge concerning expert proof on scientific or technical issues.  *Id* at 597-598.

      (a)      PLAINTIFF HAS FAILED TO SHOW THAT MORSE IS QUALIFIED TO OFFER AN EXPERT OPINION IN THIS CASE

In order to qualify as an expert under Rule 702, a witness must first establish his expertise by reference to his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Although this requirement has always been treated liberally, as the Sixth Circuit observed in *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000), the liberal interpretation of this requirement "does not mean that a witness in an expert simply because he claims to be."  *Id.* (citing  *In re Paoli RR PCB Litigation*, 916 F.2d 829, 855 (3rd Cir. 1994)).  The court is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."  *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303(6th Cir. 1997).    Thus, the trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony.  *Id. See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1178 (1999) ("The trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.")  *See also, Berry v. City of Detroit,* 25 F.3d 1342, 1351 (6th Cir 1994), *cert. denied,* 513 U.S. 1111(1995) (A proper foundation for a technical expert demonstrates "first hand familiarity" with the subject of the testimony);  *Isely v. Capuchin Province*, 877 F. Supp. 1055, 1063-4 (E.D. Mich. 1995) (The initial foundational requirement a proponent of expert testimony must meet is to establish that the witness is

qualified by virtue of his or her education and training to give an expert opinion concerning the matter in question.)

In this case, except for the title page of the report which lists his name, title and business: "John S. Morse, P.E.,[14] Mechanical engineering consulting and forensic analysis," there is virtually nothing in Morse's September 23, 2011 Rule 26 report that establishes that he has such "knowledge, skill, experience, training, or education" in the area of ladder design so as to qualify as a ladder design defect expert in this case. As set forth above, Rule 26 provides that a proposed expert's report "*must* contain. . . the witness's qualifications, including a list of all publications authored in the previous 10 years [and] a list of all other cases in which during the previous 4 years the witness testified at trial or by deposition. . . ." Fed. R. Civ. P. 26(a)(2)(B)(iv), (v) (emphasis added). There is nothing in Morse's report concerning his education, licensure, training, or employment experience, nothing to indicate that any of his opinions were ever published, and nothing to indicate that he has previously testified as an expert in any other defective ladder feet design cases. There is nothing to indicate that he ever worked for a ladder manufacturer, that he ever designed ladder feet, or that he ever drafted instructions or warnings for articulating ladders. Nor is there any indication in his report that he has ever conducted any studies or authored any articles addressing the issue of ladder feet slippage or the necessity to warn of such a potential hazard.

The fact that a purported witness is an expert in one area does not *ipso facto* qualify him to testify as an expert in all related areas. *See Oglesby v. General Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999). In *Oglesby*, the court found no abuse of discretion in the district court's

---

[14]    "P.E." is the post-nominal designation of a licensed "professional engineer."

exclusion of plaintiff's proffered liability expert, a mechanical engineer, and affirmed the district

court's grant of defendant's motion for summary judgment explaining:

> While plaintiff's expert is clearly qualified as an expert on various engineering
> principles, . . . this court finds that [the expert's] proposed testimony lacks the
> reliability, foundation and relevance necessary for admissibility in this case
> [because he] has shown no knowledge of the manufacturing process, the [allegedly
> defective] radiator's composite makeup, nor has he conducted any meaningful
> testing or analysis. . . .  Without Bradbury's testimony, Oglesby failed to meet his
> burden of proof."

*Id.  See also Ancho v. Pentek Corp.,* 157 F.3d 512, 518 (7th Cir. 1998) ("An expert's opinion is

helpful only to the extent the expert draws on some special skill, knowledge, or experience to

formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by

the witness' expertise) rather than simply an opinion broached by a purported expert." (citation

omitted).)

Here, there is nothing in Morse's report or in any other cognizable evidence of record to

establish that John Morse is qualified to offer an opinion that the Gorilla AL-13 ladder contains

negligently designed feet, that Defendant Tricam negligently designed warnings and

instructions, or that the alleged claims of defect are causally related to Plaintiff's fall.

Therefore, Morse's opinions cannot be considered in this case.[15]

---

[15]   The Court notes that Morse's (now stricken) post-summary judgment affidavit does contain
information concerning his education and experience.  If Morse had timely provided the
information he attempted to supply by way of his affidavit, it is possible that the Court would
have found Morse qualified to offer an expert opinion in this case, but that is wholly speculative.
Had Defendants been timely provided with the qualifications Morse enumerated in his affidavit,
Defendants would have been afforded discovery on his purported qualifications and may have
been able to attack those qualifications and successfully show that, despite the education and
experience indicated in the affidavit, Morse nonetheless lacks sufficient qualifications to offer
an expert opinion on the particular issues of negligent design presented here.  In any event, for
the reasons set forth in Section B above, because of Plaintiff's failure to comply with his

(b)     MORSE'S TESTIMONY IS NOT RELIABLE

Even if the Court were to find Morse "qualified" by virtue of his education and engineering experience, the Court's inquiry is not ended.  Morse's testimony also must be shown to be reliable and supported by sound data, methodology, and testing.  To do so, Morse must provide foundational testimony as to the validity and reliability of his theories.  *Daubert, supra,* 509 U.S. at 590 ("Proposed testimony must be supported by appropriate validation -- i.e., 'good grounds,' based on what is known.").  Here, courts must serve their "gatekeeping" functions by assessing whether the proffered testimony is supported by valid principles and methodology.  This function, however, does not permit the courts to second guess the validity of conclusions generated by otherwise valid methodologies and principles.  *United States v. Bonds*, 12 F.3d 540, 556 (6th Cir. 1993).

The *Daubert* Court identified several factors courts should use when evaluating the scientific or technical validity of expert opinion:  the testability of the witness's hypothesis, whether the witness's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community.  *See Daubert*, 509 U.S. at 593-94.  These factors are not a checklist, however, and no one criterion is dispositive, but rather must be "tied to the facts of [the] particular case."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1175 (1999).

The Sixth Circuit has developed further guidance on Rule 702 by recently outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v.*

---

obligations under Rule 26, the Court will not consider the additional information provided in Morse's Affidavit.

*Raymond Corp.*, 676 F.3d 521, 527 (6th Cir.2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir.2009)). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best,* 563 F.3d at 177). Also, that a purported expert's testimony was prepared solely for litigation may also be grounds for exclusion. *Id.* (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir.2007)).

Where the testimony of a proffered expert is challenged for insufficient "factual basis, data, principles, methods, or their application . . . , the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline*."* *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The Court need not necessarily hold a *Daubert* hearing to determine the admissibility of expert testimony but, nonetheless, must ensure that the disputed testimony is both relevant and reliable. *See Clay v. Ford Motor Co*., 215 F.3d 663, 667 (6th Cir.2000). Generally, "a trial judge has considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152 (abuse of discretion standard applies to the trial court's decision as to whether a hearing is needed to determine reliability of an expert).; *accord Conwood Co, L.P. v. U.S. Tobacco Co*., 290 F.3d 768, 792 (6th Cir. 2002); *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir.2000), and his decision regarding the admissibility of expert testimony is reviewed for abuse of discretion, *see Kumho Tire*, 526 U.S. at 142; *Newell Rubbermaid,* 676 F.3d at 527; *Hardyman v. Norfolk & Western Ry.*,, 243 F.3d 255, 258 (6th Cir. 2002); *see also Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 672 (6th Cir.2010) ( "Rule 702, we recognize, does not require anything approaching absolute certainty.

26

And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (internal citations omitted)).

With these standards in mind, the Court will examine John Morse's report.

As previously noted, *Daubert* instructs that courts should determine this by assessing 1) whether the proposed theory has been tested; 2) whether it has been subject to peer review and publication; 3) the rate of error associated with the methodology; and 4) whether the theory or methodology has been generally accepted in the particular scientific community.  *Daubert, supra,* 509 U.S. at 593-94.

The theory proposed by Morse is that the ladder feet wore out too rapidly allowing for the possibility of slide-outs when the ladder is positioned on dry, grit-covered asphalt. *See* Morse Report, Plaintiff's Ex. C; Defendants' Motion in *Limine*, Ex. A. He hypothesizes that "grit" particles on asphalt create a lower coefficient of friction on the surface, and when the feet of the ladder in question became smooth after wear, they were no longer able to overcome this lowered coefficient, thus causing what he postulates as a slide-out.  *Id.*

In coming to this conclusion, Morse inspected the ladder and accident scene on August 22, 2011 – i.e., four years after the accident.  *Id.* at p. 2. Morse had Eiben set the ladder up as he had on November 3, 2007, without the bungee cord tying it off.  *Id.*  Morse could not, however, test his theory about the grit particles and the worn ladder feet because the driveway had been repaved by the date of his inspection.  *Id.*  Instead, Morse relies on his "close examination" of

some photos taken of the accident scene on some unspecified date. *Id.* at p. 6.[16] Morse states

that he saw in these photos "grit-type particles, which are sphere-like in nature." *Id.* Upon

inspecting the ladder's feet, Morse observed that they were worn "particularly in the location

where they set on the ground surface when the ladder is at an angle of about 73 degrees." *Id.* On

the basis of this inspection, and from what he observed in the photos, Morse concluded, "The

ladder slid out, so the only plausible explanation, based on the physical evidence and

mathematical analysis, is that the friction coefficient was low. The physical evidence shows the

ladder feet were worn, *and the support surface itself was not slippery*. The friction coefficient

was low due to the worn condition of the ladder feet relative to the surface the ladder was setting

on." *Id.* at 5.  (Emphasis added.)

Morse's premise, however, that the driveway was dry and not slippery, is not borne out

by Douglas Eiben's own sworn testimony that on the day of the accident, there was melting frost

on the driveway where he set the ladder up and the surface was moisture-coated "like a dew."

Plaintiff's Dep. p. 41-42.  Although Morse acknowledges in his report that a "low coefficient of

friction. . . between the ladder feet and the supporting surface. . . *can be caused by a slippery*

*surface **or** a worn ladder*," *id.* at p. 8, in arriving at his opinion, Morse appears to have assumed

a dry surface and appears not to have considered Eiben's testimony of a wet surface as the cause

for his "low coefficient of friction" theory of the accident.

---

[16] The only photographs of record of the ladder set up at the accident scene are the photographs
that Douglas Eiben testified he and a friend of his took on October 27, 2010 – i.e., three years
after the accident. *see* Plaintiff's Dep., p. 21; Michael Eiben Dep., p. 18; *see also* photographs
with date 10/27/10 imprinted thereon, Defendants' Ex. 4; Plaintiff's Ex. F and enlargements at
Ex. A.

Furthermore, Morse did not perform any tests to account for any of the variables in drawing his conclusion. Though the Sixth Circuit has deemphasized the importance of performing tests in every situation, in *Clark v. Chrysler Corp.*, 310 F.3d 461, 467 (6th Cir. 2002) ("*Daubert* does not require an expert to come in and actually perform tests in any given situation"), and *Kamp v. FMC Corp.*, 241 F.Supp.2d 760, 763-764 (E.D. Mich. 2002) (testing not necessarily required where expert relies on professional experience and conducts physical examination),  Morse's opinions here are distinguishable from those of the expert witnesses in both *Clark* and *Kamp*.

The expert in *Clark* offered testimony as to a defective door latch on a certain automobile, but did not test the latch on the specific automobile in question.  Despite this lack of testing, the Court permitted the expert's testimony on the grounds that he had performed the same test numerous times on different automobile latches in other situations -- including those of the model automobile that was in question.  The expert also created a test to determine that specific latch defect that he had used previously in his employment.  Here, however, Morse has offered a novel theory of ladder feet slide-out on "grit"-covered asphalt that he has not tested either is this situation or any other. Unlike the expert in *Clark*, Morse has not performed any test to support his hypothesis or to render his theory reliable under *Daubert*.

Similarly, the expert testimony offered in *Kamp* is distinguishable from Morse's testimony.  The Court there found that an expert's testimony on a product defect was admissible despite not performing a certain, specific technical test.  The Court was able to find reliability based on the other observations and tests performed on the product.  Here, the Court is unaware of any testing done by Morse to reinforce his conclusion other than observation of the ladder and

29

its feet, and inspection of the accident scene -- years after the accident and after asphalt and gutter were replaced -- and some mathematical calculations holding certain variables constant.

The Court here is not convinced that Morse's testimony is sound or reliable given his assumptions about the accident scenario. Specifically, Morse holds constant the amount of horizontal force applied to the ladder when Eiben attempted to climb down, but fails to take into account the variables affecting the coefficient of friction, which he removes from the equation by summarily concluding that the surface was not "slippery."

Of at least equal concern, Morse appears to have not given any consideration to the fact that his inspection of the ladder upon which he bases his conclusion that the feet of the AL-13 should not have worn out after only 500 uses and that they, therefore, wore out too soon, was made four years after the accident. And, there is no evidence of record to establish that the ladder in question had not been used in the intervening four years, nor is there anything in Morse's report indicating that he established that fact before making his determination. He simply seems to have assumed that it was not used in the intervening four-year period. These assumptions lead to Morse's conclusions that the ladder feet wore too quickly, and that the worn ladder feet were the sole cause of the accident. Because the conclusion requires logical leaps, with no foundational facts, Morse's testimony is not sufficiently reliable to be admissible under *Daubert*.

Beyond this, the Court finds Morse's opinions to be unreliable due to his failure to provide examples of alternative foot designs or alternative foot pad material that would not wear after 500 uses and would also be capable of application to the feet of an articulating ladder. Rather, Morse merely states in a conclusory fashion, that "[t]here are many feasible and safer

30

alternative designs which would have prevented this ladder incident." Morse Report at p. 11.

He also states that using "the rubber material used in tires" would last many times as long as the

ladder feet on the TriCam [sic] ladder" because tire rubber "is exposed to a much harsher

operating environment and conditions and [] tires last for tens of thousands of miles." *Id.* He

provides no basis, however, for concluding that tire rubber could be fashioned for safe use on an

articulating ladder nor does he provide any rational basis for comparison of the durability of

tires when used on automobiles to the durability of the material used on the foot of the AL-13.

Morse's opinion is based on nothing more than speculation and not based on scientific or

technical knowledge.

      c.    REMAINING *DAUBERT* FACTORS

Recognizing that testability alone is not dispositive, the Court also must analyze the

remaining *Daubert* factors of peer review and publication, rate of error, and general acceptance.

First, Morse's report does not give any indication that Morse has published materials that

address his theory that worn ladder feet are unreasonably prone to slide-out when placed on

"grit"-covered asphalt, nor does this theory appear to have been subjected to peer review.

Second, Morse has not provided any information concerning rate of error for the theory he

alleges. Finally, Morse does not indicate that his theories are generally accepted in the ladder

safety community. Taken together, Plaintiff has failed to establish that Morse's opinions

represent reliable scientific knowledge so as to be admissible under *Daubert* and Rule 702.

D.     THE INADMISSIBILITY OF PLAINTIFF'S EXPERT RENDERS PLAINTIFF'S
       PRODUCT LIABILITY CLAIM RIPE FOR SUMMARY JUDGMENT

John Morse is Plaintiff's sole design defect expert.  Because the Court has determined that Morse's testimony is inadmissible, Plaintiff now has no expert testimony to support his design defect claim, and this lack of evidence entitles the Defendants to summary judgment on their design defect claim as a matter of law.

In *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984) and *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372 (1982), the Michigan Supreme Court established that in order to establish a *prima facie* case of design defect, a plaintiff must present "data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of proposed alternatives, or evidence otherwise concerning the 'unreasonableness' of risks arising from [the alleged defect]." *Owens*, 414 Mich. at 431-32.  An expert's assertion that his proposed alternative or alternatives would have been safer is insufficient to create a question of fact as to whether the chosen design was defective.  *Id*. Further, the plaintiff bears the heavy burden of making a showing that the chosen design was unreasonably dangerous.  *Id.*

Here, the testimony of the Plaintiff's expert has been found to be inadmissible.  Based on the above standards, the Plaintiff has failed to make out a *prima facie* case of design defect. Because the expert's testimony is inadmissible, Plaintiff has not shown evidence as to the magnitude of risks of the ladder feet and he has not established the reasonableness of the slide-

32

out theory.  This being the case, this Court finds that Plaintiff's claim of design defect cannot survive summary judgment.[17]

E.      OPEN AND OBVIOUS NATURE OF THE RISK

The Defendants also contend that the open and obvious nature of the alleged defect in the product precludes the Plaintiff's claim of failure to warn under Michigan law and precedent. This Court agrees.

        1.      DUTY TO WARN

M.C.L. § 600.2948(2) states that "[a] defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action."  The

---

[17]  Even if the Court were to find Morse qualified under the *Daubert* standards to offer an opinion in this case and allow Plaintiff to use his opinion to prove his claim, the Court would nonetheless conclude that Plaintiff has failed to establish a prima *facie case* of design defect on the merits.  As indicated above, to withstand summary judgment on a claim of defective design, the plaintiff must produce evidence there was a reasonable alternative design available and that the available alternative design was practicable.  *Gregory v. Cincinnati, Inc.*, *supra,* 450 Mich. at 13.  As set forth above, Morse offers no evidence in his report as to alternative designs other than to conclusorily state, "There are many feasible and safer alternative designs which would have prevented this ladder incident" and that "the rubber material used in tires" would last many times as long as the ladder feet on the TriCam ladder."  It is well-settled, however, that conclusory statements are insufficient to withstand a properly supported motion for summary judgment.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (holding that, to withstand a motion for summary judgment, a plaintiff must adduce some concrete evidence on which a reasonable juror could return a verdict in his favor); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir.1992) (holding that conclusory statements are insufficient in summary judgment proceedings). Morse's opinion being wholly conclusory, and Plaintiff not having offered any other legally cognizable evidence of available practicable alternative designs, he has failed establish a *prima facie* design defect claim.  Summary judgment, therefore, is proper on the merits of Plaintiff's claim.  *See Gowenda v. Werner Co.*, 932 F. Supp. 183 (E.D. Mich. 1996), *aff'd*, 127 F.3d 1102 (6th Cir. 1997).

Michigan Supreme Court has affirmed this, holding that "it is a well-established rule that there is no duty to warn of dangers that are open and obvious." *Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 393, 491 N.W.2d 208, 214 (1992). Assessing the "obvious" nature of a risk is an objective test. *Id*. "Open and obvious dangers are conditions that create a risk of harm that 'is visible . . . , is a well known danger, or . . . is discernible by casual inspection. Thus, one cannot be heard to say that he did not know of a dangerous condition that was so obvious that it was apparent to those of ordinary intelligence.'" *Id*. (quoting 3 Products Liability, *supra,* § 33:26, p. 56). Michigan courts have limited this rule of preclusion to apply only to products which may be described as "simple tools." *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982). Therefore, to find that an open and obvious risk or condition of a product precludes a claim of duty to warn as a matter of law, a court must find that the product is a simple tool.

However, the scope of what constitutes a "simple tool" has been determined by Michigan courts to be relatively broad. The Sixth Circuit has agreed with the Michigan courts and found that a product is simple where one or both of the following conditions exist: "1) the products are not highly mechanized, thus allowing the users to maintain control over the products; 2) the intended use of the products does not place the users in obviously dangerous positions." *Swix v. Daisy Mfg. Co., Inc.*, 373 F.3d 678, 685 (6th Cir. 2004). The Court in *Swix* went on to list several of the products that Michigan courts have rules as simple, including: "hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes, trampolines and backyard pools," as well as firearms and air rifles. *Id*. Michigan courts have also determined that ladders are simple tools. *See Pawlowski v. Van Pamel,* 368 Mich. 513, 118 N.W.2d 395(1962); *Laier v. Kitchen*,

34

266 Mich. App. 482, 702 N.W.2d 199 (2005); *Kelly v. R.D. Werner Co., Inc.*, 1999 WL 33451694 (Mich. App. 1999).

Because the ladder is a simple tool, the Court must now determine whether the risks or conditions created by use of a ladder with worn feet are open and obvious. The Sixth Circuit in *Swix, supra,* applying Michigan law, held that determination of open and obvious requires assessing "'the typical user's perception and knowledge of whether the relevant condition or feature that creates the danger associated with use is fully apparent [to] the ordinary user or consumer'." *Id* at 686, quoting *Glittenberg*, 441 Mich. at 391-92, 491 N.W.2d at 213. Here, this objective standard requires determining whether an ordinary user of ladders is aware or knows about the risks associated with using a ladder, i.e. falling, and slide-outs. This Court finds that the risks associated with the use of straight or extension ladders -- namely that slide-outs and/or falls may occur whenever a ladder is used -- are open and obvious. This is true regardless of surface. The obviousness of these risks is underscored by Plaintiff's description of the steps he used to prevent the risks, i.e., gripping and hopping on the ladder to determine its stability and attaching the upper portion of the ladder to the gutter using a bungee cord.

The Michigan courts have also repeatedly emphasized that "[a] manufacturer has no duty to warn if it reasonably perceives that the potentially dangerous condition of the product is readily apparent or may be disclosed by a mere casual inspection. . . . " *Glittenberg* at 390-391, 491 N.W.2d 208. Here, Plaintiff's own proposed expert has indicated that whether the feet of the ladder were worn is readily apparent upon casual inspection. Therefore, Tricam was under no duty to warn.

Furthermore, even if Tricam did have a duty to warn, the ladder in question had a warning label not to set it up on a slippery surface, and the owner's manual explicitly instructed that the ladder should be inspected before each use and specifically advised that worn feet should be replaced.  Even if, as Plaintiff argues, these warnings were deficient and a more clearly-stated warning of the danger of slide-out should have been provided, he has failed to establish that the lack of such a warning was the proximate cause of his injuries.  As the Michigan Court of Appeals has stated, proximate cause is not established absent a showing that the plaintiff would alter his or her behavior in response to a warning. *See, Kelly v. R.D. Werner Co., supra* (citing ., 203 Mich. App 158, 166; 511 NW2d 899 (1993)). In *Kelly*, the court held that because the plaintiff offered no evidence that he would have refused to use the ladder -- a simple tool -- if a warning had been provided, summary judgment was properly granted.   Here, Plaintiff testified that he did not read the warnings or the owner's manual before using the ladder on the date in question because he found that to be unnecessary. Like the plaintiff in *Kelly*, Plaintiff here has offered no evidence that he would have refused to use the ladder if a warning had been provided.

Under these circumstances no failure to warn claim will lie.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's failure to warn claim.

## CONCLUSION

For all of the reasons set forth in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motion to Strike the Affidavit of John Morse **[Dkt. # 24]** is GRANTED.  Defendants' Motion to Strike the Affidavit of Plaintiff Douglas Eiben is GRANTED, IN PART; paragraphs 4 and 5 of Plaintiff's Affidavit are ordered stricken.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment **[Dkt. # 14]** is GRANTED, and Plaintiff's Complaint is DISMISSED, in its entirety, with prejudice.

IT IS FURTHER ORDERED that Defendants' Motion in *Limine* **[Dkt. # 15]** is denied as MOOT.

Let Judgment be entered accordingly.


Dated:  April 22, 2013                              s/Gerald E. Rosen
                                                    GERALD E. ROSEN
                                                    CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 22, 2013, by electronic and/or ordinary mail.

                                                    s/Julie Owens
                                                    Case Manager, (313) 234-5135